## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

JIMMY R. MONTOYA,

    Plaintiff,

vs.                                                          No. 14-cv-00360-JCH/SCY

NEW MEXICO DEPARTMENT
OF WORKFORCE SOLUTIONS
and CELINA BUSSEY, in her official capacity,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss based on *Younger*[1] Abstention (ECF No. 9). The Court, having considered the motion, briefs, pleadings, applicable law, and otherwise being fully advised, concludes that the motion should be denied.

**I.    STANDARD**

*Younger* abstention acts as a jurisdictional bar. *D.L. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004). Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a case for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion made under Rule 12(b)(1) may go beyond the allegations of the complaint and challenge facts upon which subject matter jurisdiction depends. *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2003). "When a party challenges the allegations supporting subject-matter jurisdiction, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* at 1296 (internal quotations

---

[1] The *Younger* abstention doctrine derives from the case of *Younger v. Harris*, 401 U.S. 37 (1971).

omitted). A court's reference to such evidence when ruling on a Rule 12(b)(1) motion does not convert the motion to dismiss to a Rule 56 motion for summary judgment. *Id.*

The Court can also dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a plaintiff's complaint in ruling on a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations as true. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Federal Rule of Civil Procedure 12(d) applies when a party presents matters outside the pleadings:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Under Rule 12(d), a court has broad discretion to refuse to accept the extra-pleading materials and resolve the motion solely on the basis of the pleading itself. *See Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir. 1998). Reversible error may occur if a court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment. *Id*.

No conversion is required, however, when the court considers information that is subject to proper judicial notice or documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and

information that is subject to proper judicial notice."); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (explaining that court may properly consider on motion to dismiss documents central to plaintiff's claim and referred to in complaint, where document's authenticity is not in dispute); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (noting that no conversion is required when a court takes judicial notice of its own files and records and facts that are matter of public record). The documents, however, "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal*, 453 F.3d at 1264 n.24 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Defendants have submitted documents that are part of the state administrative proceeding, arguing that the Court may consider them on a motion to dismiss for lack of subject matter jurisdiction. Plaintiff does not object to the Court's consideration of the submitted documentation and does not question their authenticity. The Court agrees that, under either Rule 12(b)(1) or Rule 12(b)(6), it may consider the administrative records. Consequently, the Court will not convert Defendants' motion to dismiss into one for summary judgment. Therefore, the following facts are those set forth in the complaint in the light most favorable to Plaintiff, as well as the facts set forth in the exhibits that are properly the subject of judicial notice or that are documents referred to in Plaintiff's complaint and central to his claims.

## II.     FACTUAL BACKGROUND

The New Mexico Department of Workforce Solutions ("DWS") is the state administrative agency responsible for administering the unemployment insurance ("UI") program in New Mexico. Compl. ¶ 14, ECF No. 1. UI is a federal-state coordinated program designed to provide partial income replacement to regularly employed members of the labor force who become involuntarily unemployed, which the State administers within national

guidelines promulgated under Title III and Title IX of the Social Security Act of 1935. *See id.* ¶¶ 17-18. To be eligible for benefits, a worker must register for those benefits through DWS, must have a prescribed amount of employment and earnings during a specified base period, and be available for work and able to work. *See id.* ¶ 19. Defendant Celina Bussey is the Cabinet Secretary for the DWS and exercises control over and oversees the operations of the DWS. *Id.* ¶ 15.

Plaintiff Jimmy R. Montoya worked for Premier Transportation ("Premier") from July 2008 through May 31, 2013, as a driver. *Id.* ¶ 24. In June 2013, Mr. Montoya filed a claim for UI benefits, claiming that he was laid off from his job when the company went out of business and that, although Premier gave him a list of companies that had expressed a willingness to hire Premier's former employees, none offered him a job because he lived in a remote part of the State. *See id.* ¶¶ 25-28.

Initially, DWS approved Mr. Montoya's UI claim. *Id.* ¶ 29. Subsequently, Premier appealed Mr. Montoya's UI claim. *Id.* Premier submitted to DWS documentation alleging the following: We Care Transportation purchased all assets of Premier's business; We Care Transportation offered all employees the opportunity to remain as employees in the same positions; and some employees, including Mr. Montoya, chose not to work in the same position and instead chose to get UI benefits to use as paid vacation time. *See* Def.'s Mot., Ex. 2, ECF No. 9 at 16-21 of 39. DWS subsequently sent forms with additional questions to Mr. Montoya and Premier. *See* Def.'s Mot., Ex. 3 & 4, ECF No. 22-26 of 39. DWS later reversed the initial claim determination, Compl. ¶ 29, stating in its "Notice of Disqualification:"

> You failed, without good cause, to accept suitable work offered to you. You are not entitled to receive benefits beginning 5/31/2013….

> This determination results in an overpayment of unemployment benefits in the total amount of $1,791.00. Up to 100% of any future benefits to which you are entitled will be taken and applied to your overpayment balance.

Def.'s Mot., Ex. 5, ECF No. 27-28 of 39. The Notice stated that, under N.M. Stat. Ann. § 51-1-38(B), DWS could assess a civil penalty of 25% of the amount of benefits obtained as a result of any intentional misrepresentations or failure to disclose material facts, which unlike the overpayment balance, could not be reduced through the offsetting of future UI benefits. Def.'s Mot., Ex. 5, ECF No. 28 of 39. The Notice, however, listed the "Total Overpayment Amount" as $1,791.00 and the "Total Penalty Amount" as $0.00. *Id.* The Notice also informed Mr. Montoya he could request a hearing on DWS's determination. *Id.*

On September 3, 2013, Mr. Montoya appealed the adverse claim determination to DWS's Appeals Tribunal using the form DWS provided. Compl. ¶¶ 29-30, ECF No. 1. The appeal form included a space for the claimant to provide the "Telephone number to be used for hearing" and "Reason for Appeal." *See id.* ¶ 31; Def.'s Mot., Ex. 6, ECF No. 9 at 31 of 39. Mr. Montoya wrote his phone number on the form, stated that no one had offered him a job or interview, and submitted his appeal to DWS. *See* Compl. ¶ 31, ECF No. 1; Def.'s Mot., Ex. 6, ECF No. 9 at 31 of 39. By letter dated September 3, 2013, DWS sent Mr. Montoya a "Monthly Statement of Account for 8/1/2013 to 9/1/2013" stating that he owed $1,791.00 and that he "must begin repaying this overpayment." Def.'s Mot., Ex. 7, ECF No. 9 at 32-34 of 39.

On or around September 13, 2013, DWS issued a five-page notice of the Appeals Tribunal hearing, which was scheduled to take place Monday, September 30, 2013 at 9:15 a.m. via telephone. Compl. ¶¶ 32-33, ECF No. 1. The first page of the hearing notice included the time, date, duration, and name of the administrative law judge ("ALJ") for the telephonic

hearing.  *See* Compl., Ex. A, ECF No. 1 at 12 of 16.  The second page of the notice had a section entitled "How to participate in your hearing," which stated as relevant here:

> If your hearing is scheduled for a day other than a Monday, you must call one of the following toll-free phone numbers no later than 4:00 PM NEW MEXICO TIME on the business <u>day before</u> your scheduled hearing.
>
> If your hearing is scheduled for a Monday, you must call one of the following toll-free phone numbers no later than 4:00 PM NEW MEXICO TIME the **Friday before** your hearing.

Compl., Ex. A, ECF No. 1 at 13 of 16.  The third page of the notice under "HOW THE HEARING WILL BE HELD" provided, in relevant part:

> **You must call the Appeals Tribunal for your hearing; you will not be called automatically.**  If your hearing is scheduled for a Tuesday, Wednesday, Thursday or Friday, you (and each of your witnesses, if they are at different locations) must call the Appeals Tribunal number listed in the Notice of Hearing by 4:00 PM on the business day **before** your scheduled hearing to leave a callback phone number.  If your hearing is scheduled for a Monday, the deadline for calling in and providing your callback number is 4:00 PM on the **Friday before** your hearing.  Both you and your witnesses and representatives, if any, must provide the **Claimant ID and Issue ID numbers** listed on your hearing notice.  If you or your witnesses fail to call in by the deadline, you or they will not be allowed to participate and/or the appeal will be decided without your input….If you are disconnected during the hearing, hang up and your ALJ will attempt to call you back. It is your responsibility to have a working phone for the entire length of the hearing.

Compl., Ex. A, ECF No. 1 at 14 of 16.

This requirement to call in by 4:00 p.m. on the business day prior to the hearing was a recent change to the boilerplate notice requirement that DWS began implementing on or around September 2013.  Compl. ¶ 39, ECF No. 1.  Since the change, DWS's policy is to deny hearing access to all those appellees who fail to call the Appeals Tribunal by 4:00 p.m. on the business day before the hearing.  *Id.* ¶ 40.

When Mr. Montoya received the hearing notice, he read it, but was confused.  *Id.* ¶ 37.  Mr. Montoya called DWS for clarification of the hearing instructions, but the DWS

representative told him, "you need to read the paperwork, it's not my job to explain it to you." *Id.* ¶ 38.

On Monday, September 30, 2013, the date of the hearing, Mr. Montoya called in to the Appeals Tribunal at 9:05 a.m., ten minutes prior to the scheduled hearing. *Id.* ¶ 41. When connected, he explained who he was and why he was calling, but the DWS representative told him his case had been "dismissed" and that he would not be allowed to participate in the hearing due to his failure to telephone the Department before 4:00 p.m. on the previous Friday. *Id.* ¶ 42. On October 1, 2013, DWS issued its Decision of Appeals Tribunal, in which it noted that DWS did not hold a hearing and that, in lieu of a hearing, the ALJ entered findings and conclusions based solely on the agency record. *Id.* ¶ 43. Without acknowledging that Mr. Montoya had telephoned the tribunal to try to attend the scheduled hearing, the Appeals Tribunal found that DWS notified Mr. Montoya of the date and time of the hearing, but that he failed to appear for the hearing and failed to produce substantial evidence in support of his appeal. *Id.* ¶¶ 44-45. The Appeals Tribunal reasoned that, since Mr. Montoya failed to appear, there was no evidence before it tending to show that the claim determination was improper, and thus it affirmed the determination. *Id.* ¶ 46.

By letter dated October 1, 2013, DWS sent Mr. Montoya a "Payment Plan Agreement," informing him that he must pay $298.50 every month for 6 months until the total balance of $1,791.00 has been paid in full. *See* Def.'s Mot., Ex. 8, ECF No. 9 at 38-39 of 39. On October 4, 2013, Mr. Montoya timely appealed the Appeals Tribunal decision to the Secretary of DWS. Compl. ¶ 47, ECF No. 1. On October 16, 2013, the Secretary of DWS affirmed the Appeals Tribunal decision denying eligibility, found that Mr. Montoya failed to appear for the hearing, without acknowledging that he called in on the day of the hearing, and concluded that there was

no "good cause" to excuse his failure to appear because "the reason why he failed to appear was because he did not read the hearing instructions." *Id.* ¶¶ 48-49.

On April 2, 2014, DWS sent Mr. Montoya another monthly account, stating that the same amount was owed and past due. Def.'s Mot., Ex. 7, ECF No. 9 at 35-37 of 39.

On April 16, 2014, Mr. Montoya filed in federal court a complaint for violations of due process and of Sections 303(a)(1) and 303(a)(3) of the Social Security Act for failing to provide him an adequate opportunity for an agency hearing by enforcing an overly burdensome pre-hearing procedure with inadequate notice. *See* Compl. ¶¶ 50-61, ECF No. 1. Mr. Montoya seeks declarations that the DWS policies and procedures place an undue burden on the opportunity for a fair hearing in violation of due process and the Social Security Act; the notice is inadequate and violates due process rights; and DWS violated Mr. Montoya's due process rights by failing to provide him adequate notice and a hearing. *See id.*, ECF No. 1 at 10-11 of 16. Mr. Montoya also requests the Court to order DWS to grant him a hearing on the merits of his UI case and to modify its policies and procedures to abolish the call-in procedure and allow UI claimants to call in for their hearings up to ten minutes prior to their scheduled hearing time, or alternatively, to require DWS to initiate the hearing by calling claimants directly. *See id.* at 11 of 16. Finally, Mr. Montoya requests reasonable costs and attorney's fees. *Id.*

On May 7, 2014, Defendants filed a Motion to Dismiss Based on Younger Abstention (ECF No. 9). Defendants contend that Mr. Montoya attempts to short-circuit the state administrative process without exhausting the available appeals and impermissibly asks this Court to interfere with an ongoing state administrative proceeding. Defendants assert that, under *Younger*, this court must refrain from exercising jurisdiction and dismiss the case. Plaintiff

argues that *Younger* does not apply here because the underlying administrative proceedings were not civil enforcement proceedings initiated by Defendant.

## III. ANALYSIS

Federal courts generally have a duty to decide cases within the scope of their jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584, 588 (2013). The *Younger* doctrine, however, "exemplifies one class of cases in which federal-court abstention is required:" when there is a parallel, pending (1) state criminal prosecution; (2) civil enforcement proceeding akin to a criminal prosecution; or (3) civil proceeding involving certain orders and judgments of the state courts that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint*, 134 S.Ct. at 588. The Supreme Court has clarified, however, that the application of the *Younger* abstention doctrine should occur only in these "exceptional" circumstances. *Id.* When none of these specific circumstances are present, the general rule governs: the pendency of an action in state court is no bar to proceedings regarding the same matter in a federal court with jurisdiction over the case. *Id.*

Here, Defendants argue that this Court must abstain under *Younger* based on the second exceptional circumstance – a civil enforcement proceeding. Defendants contend that DWS initiated a proceeding to take away Mr. Montoya's unemployment benefits based on a failure to accept suitable work, he did not prevail in that action, and as a result, he is required to pay back those benefits that DWS is actively seeking to collect.

> The Supreme Court explained the contours of the second exception as follows:
>
> Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings "akin to a criminal prosecution" in "important respects." … Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. See, *e.g.*, *Middlesex* [*County Ethics Comm. v. Garden State Bar Assn.*], 457 U.S. [423,] 433–434 [(1982)] (state-initiated disciplinary proceedings against

9

> lawyer for violation of state ethics rules). In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. See, *e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (state-initiated administrative proceedings to enforce state civil rights laws); *Moore v. Sims*, 442 U.S. 415, 419–420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents); *Trainor v. Hernandez*, 431 U.S. 434, 444, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil proceeding "brought by the State in its sovereign capacity" to recover welfare payments defendants had allegedly obtained by fraud); *Huffman* [*v. Pursue, Ltd.*], 420 U.S. [592,] 598 [(1975)] (state-initiated proceeding to enforce obscenity laws). Investigations are commonly involved, often culminating in the filing of a formal complaint or charges….

*Sprint*, 134 S.Ct. at 592.

To determine whether the civil procedure for recovery of over-payments of UI benefits amounts to a civil enforcement procedure akin to a criminal prosecution, the Court will begin with an examination of the relevant statutes and administrative proceedings. The New Mexico Court of Appeals has exhaustively set forth the framework in New Mexico for the payment of UI benefits and the recovery of over-payments:

> The initial determination of whether a claimant is eligible for unemployment benefits is made by a claims examiner who conducts preliminary fact finding, including obtaining statements from the claimant and employer. *See* 11.3.300.308(A) NMAC (11/15/2012). Once the claim has been evaluated, the claims examiner issues a NCD. 11.3.300.308(C) NMAC. A party dissatisfied with the determination of the claims examiner may appeal the initial determination. If an initial determination is made in favor of the claimant and payment of benefits is begun, payments shall not be stopped without prior notice and an opportunity to be heard. 11.3.300.308(E) NMAC. This provision necessarily results in some payments being made upon an initial determination of eligibility that are subsequently overturned. As a result, the NCD advises the claimant that if the appeal decision is against him, he will be required to repay the benefits received. Following a hearing before an Administrative Law Judge (ALJ) within DWS's appeals tribunal at which parties may be represented by counsel and may present testimonial and documentary evidence, the ALJ issues a decision of the appeals tribunal. *See* 11.3.500.10 NMAC (11/15/2012). The parties may further appeal the decision of the ALJ first to the secretary, who may enter a decision, refer the decision to the board of review directly, or if the secretary does not take action within fifteen days, the decision will be automatically scheduled to be heard before the board. 11.3.500.12(B), (C) NMAC (11/15/2012). Once the secretary or board of review issues a decision, the appellant has exhausted administrative

10

review. 11.3.500.13 NMAC (11/15/2012). Finally, an aggrieved party may appeal that decision as of right to the district court. Rule 1–077(A).

DWS's authority to recover overpayments of unemployment benefits is governed by Section 51–1–8(J) and NMSA 1978, Section 51–1–38(F) (1993). In "double affirmation" cases—those in which a decision in favor of the claimant is then affirmed by either the tribunal, board of review, or judicial action only to be ultimately reversed—Section 51–1–8(J) provides that the claimant is not liable for overpayments. This case, however, involves "single affirmation" in which the Tribunal and secretary disagreed with the decision of the claims examiner. In such cases, the overpayments are not "unemployment compensation," and the monies are not being used for the administration of unemployment compensation laws and must be recouped. Section 51–1–38(F) states that a claimant

> who has received benefits as a result of a determination or decision of the department ... that he was eligible and not disqualified for such benefits and such determination or decision is subsequently modified or reversed by a final decision ... irrespective of whether such overpayment of benefits was due to any fault of the person claiming benefits, *shall*, as determined by the secretary or his authorized delegate, either be liable to have such sum deducted from any future benefits payable to him ... or be liable to repay to the department ... a sum equal to the amount of benefits received by him for which he was not eligible or for which he was disqualified or that was otherwise overpaid to him[.]

(Emphasis added.) Thus, DWS is required by law to issue a demand for a refund of improperly paid benefits whenever a determination of overpayment is made.

*Millar v. New Mexico Dept. of Workforce Solutions*, 2013-NMCA-055, ¶¶ 8-9, 304 P.3d 427.[2]

Former subsection G,[3] provided for the collection of any such overpayments of UI benefits:

> Any amount of benefits for which a person is determined to be overpaid pursuant to this section may be collected in the manner provided in Subsection B of Section 51-1-36 NMSA 1978 for the collection of past-due contributions, notwithstanding that the person from whom the overpayment is to be collected has been assessed a penalty pursuant to Subsection A, B and C of this section.

---

[2] Section 51-1-38 was amended effective July 1, 2013, and subsection F is now subsection H. *See* N.M. Stat. Ann. § 51-1-38 (2014). As relevant here, the substance of subsection F did not change. *Compare* N.M. Stat. Ann. § 51-1-38(F) (2013), *with* N.M. Stat. Ann. § 51-1-38(H) (2014).

[3] Subsection G, effective July 1, 2013, is now Subsection I, but is substantively the same. *Compare* N.M. Stat. Ann. § 51-1-38(G) (2013), *with* N.M. Stat. Ann. § 51-1-38(I) (2014).

N.M. Stat. Ann. § 51-1-38(G). Section 51-1-36(B) stated "the amount due shall be collected by civil action in the name of the division" and "shall be heard by the court at the earliest possible date." N.M. Stat. Ann. § 51-1-36(B) (2013).

Plaintiff argues that the state proceedings are not civil enforcement proceedings because the State did not bring the civil action, rather Plaintiff initiated the action, and the recovery of UI benefits was not done to "punish" Plaintiff for a "bad act." Defendants respond that they initiated the proceeding by sending a questionnaire to Mr. Montoya to investigate the suitable work issue.

This Court disagrees with Defendants' position that they initiated the prior administrative proceedings within the meaning of the second "exceptional" circumstances prong. Mr. Montoya, not DWS, instituted the proceedings by applying for benefits. That those proceedings ultimately resulted in a decision favorable to DWS after DWS filed the necessary appeal does not mean that DWS began the proceedings. Defendants nonetheless posit the question, "[I]f a state-initiated action to determine whether someone wrongfully collected government benefits while engaging in disqualifying conduct is not an enforcement proceeding, then what is?" Def.'s Reply 3, ECF No. 16. The answer to their question clearly can be found in Section 51-1-38(G) and Section 51-1-36(B) wherein the state legislature said that enforcement for the collection of amounts due shall be done through a civil action in the name of the division. *See* N.M. Stat. Ann. §§ 51-1-36(B) and 51-1-38(G). *See also In re Valdez*, 136 B.R. 874, 875-77 (D.N.M. 1992) (noting that Employment Security Division of New Mexico Department of Labor's *suit* to collect from debtor, after hearing officer determined that she had obtained unemployment compensation benefits not legally due by knowingly failing to disclose material facts, is action for benefit of state fund). Although during the administrative proceedings, a determination was made that Mr.

Montoya is liable for overpayment of UI benefits, the vehicle for enforcement of the amount due is by a separate court action initiated by DWS.

Nowhere in the record does it appear that DWS has initiated a civil action in state court that is ongoing to collect on the amount due. Nor have Defendants pursued a civil penalty against Mr. Montoya under the fraud provisions, *see* N.M. Stat. Ann. § 51-1-38, which could have resulted in a fine or imprisonment. Accordingly, the Court concludes that there is no ongoing civil enforcement proceeding akin to a criminal prosecution that requires the Court to abstain in this case under *Younger* to avoid interference with the State's civil enforcement proceedings. *Compare Sprint*, 134 S.Ct. at 592-93 (noting importance of fact that underlying proceedings were not initiated by the State in its sovereign capacity in concluding that *Younger* doctrine did not extend to administrative proceeding), *with Trainor v. Hernandez*, 431 U.S. 434, 435 (1977) (applying *Younger* abstention doctrine to recipients' federal case for return of attached money, where Illinois Department of Public Aid had already filed civil lawsuit against recipients of public assistance benefits alleging that they had fraudulently concealed assets and had instituted attachment proceeding against recipients' property); *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d at 1229 (applying *Younger* abstention where, if federal claim succeeded, it would foreclose school district's pending state-court suit that sought reimbursement from mother and her boyfriend for educational expenses of the children to which they, as non-residents, were not entitled).[4]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss based on Younger Abstention (**ECF No. 9**) is **DENIED**.

---

[4] Plaintiff additionally argues that *Younger* abstention does not apply because the state court proceedings are not pending or ongoing. This Court need not resolve this issue, given its conclusion that the *Younger* abstention doctrine does not apply on other grounds.

_____
**UNITED STATES DISTRICT JUDGE**